STATE, CHARLES W. SUTTERLY ET AL., PROSECUTORS, v. COURT OF COMMON PLEAS, CAMDEN COUNTY, AND STEPHEN PARSONS.

Under the charter of the city of Camden, exclusive power to grant tavern licenses was conferred on the common council.   An act passed in 1876 repealed the sections in the charter conferring such power. *Held*—that such repealing act, being special, is void under art. IV., § 7, ¶ 11, of the state constitution.

On *certiorari* to the Court of Common Pleas of Camden county.

Argued at June Term, 1879, before Justices SCUDDER, KNAPP and REED.

For the plaintiff, *C. T. Reed.*

For the defendant, *J. Eugene Troth.*

The opinion of the court was delivered by

KNAPP, J.   This writ of *certiorari* brings for consideration proceedings of the Court of Common Pleas of Camden county, in granting to the defendant a license to keep an inn and tavern in the city of Camden.   Its design is to test, in this way, the power of the Court of Common Pleas to grant such licenses within that city, the city authorities questioning the power of the court so to do.   Section one hundred and one of the act entitled "An act to revise and amend the charter of the city of Camden," approved February 14th, 1871, (*Pamph. L., p.* 257,) in language clear and entirely certain, confers upon the city council the exclusive right to

grant all such licenses in the city.    Sections one hundred and two and one hundred and three prescribe the terms and conditions on which they may be granted, and direct the procedure before the common council.    The effect of section one hundred and one, without the use of any express words for that purpose, was to repeal the general law which reposed in the Courts of Common Pleas of the state jurisdiction over the subject of tavern licenses, so far as it applied to the city of Camden.    By an act approved April 18th, 1876, (*Pamph. L., p.* 510,) entitled " A further supplement to an act entitled ' An act to revise and amend the charter of the city of Camden,' " sections one hundred and one, one hundred and two and one hundred and three of the revised charter were repealed. The repeal of the section which took away from the Court of Common Pleas its jurisdiction, had the effect to revive the general law, and to re-invest the county court with control over this subject, if the legislature possessed the constitutional right to pass such a law.    The right to do so is denied, and the reason assigned for such denial is that the law is inimical to that clause in the state constitution, as amended in 1875, which declares that the legislature shall not pass private local or special laws regulating the internal affairs of towns and counties.    *Const., art. IV.,* § 7, ¶ 11.

It has been settled by adjudications in this court, and in the court of last resort, that the word " towns," used in this clause, is a generic term, embracing within its meaning cities, as well as townships and boroughs.    *Pell* v. *Newark,* 11 *Vroom* 71 ; *S. C. on error, Id.* 550.

The general effect of the clause in question was declared to be to take away from the legislature the control of municipal affairs in these political divisions, through the instrumentality of local and special laws, in all cases where the subject matter of the enactment was not in its nature necessarily local and special, and to attain those ends through general laws, applicable alike to all the members of any class gifted with common qualities or attributes, thus securing uniformity in local municipal government.

The repealing act was local and special. This appears as well by its title, which must express the object of the law, as by the subject matter of the legislation. The elaborate argument of counsel, it seems to me, was not needed to prove that an act of the legislature, which simply repealed a former enactment, is a *law* passed by that body ; nor do I think there can be any serious doubt that such a law *may* be one regulating the internal affairs of a town or county within the meaning of the constitutional provision referred to. To repeal a section of the city charter which confers some power of government, or one restraining or limiting the exercise of some other, may be as effectual an interference with and regulation of its internal affairs as a law setting up within the municipality some new adjunct to the local government, or one which introduces radical change in the instruments and methods of administration.

In the case of *Bingham* v. *Camden*, 11 *Vroom* 156, it was decided by this court that an act *creating* a board of excise commissioners, with power over the subject of licenses, was an act *regulating* its internal affairs. It was a change in the measure of its corporate powers by enlargement, but it was because it was a *change* in the attributes of the municipality that it was found to be objectionable. Had the power inhered in the city, taking it away would have been a change precisely equal in degree in the opposite direction.

The power of the legislature to create and destroy cities is not drawn in question, but I think it cannot destroy by piecemeal, through the instrumentality of special laws, with greater right than it can by the same means add to and construct. The repeal of an act, or a section in the city legislation, may take away control over streets, or withdraw the regulation of sidewalks, or street lighting from the city. It may extinguish the power to appoint a police force, or to try and remove its members for disorder, incompetency or crime. Indeed, any function, legislative, administerial or judicial, may be abstracted from the body of its chartered powers, and in that way important alterations in the internal polity of a town or city by

special laws become easy, if repealing statutes are not within the constitutional interdict. The power attempted to be severed by the act of 1876 from those administered by the city, could be restored at pleasure by the repeal of that act, if such laws are unobjectionable.

It would be a narrow and restrained construction of the word "regulating," which excluded from its embrace those changes in government which could be wrought by repealing statutes.

If, then, the repealing act of 1876, being local and special in its character, was a "regulation of the internal affairs " of the city of Camden, in respect to a matter not in its nature local or exclusively pertaining to that city, it is inoperative, and the licensing power continues with the city, in the sole control of the city council, and was not rightfully exercised by the Court of Common Pleas.

It was decided, in the case of *Bingham* v. *Camden, ubi supra,* that the act creating the excise board, and conferring upon it the power to license inns, &c., was within the constitutional inhibition, as one relating to the internal affairs of the city.

The act in question operates upon the same subject, taking away from the city council control over that branch of police regulation, one which has been exclusively administered by it under legislative authority since 1871.

If it be admitted that the power cannot be given by special enactments, it must, for the same reason, be conceded that it cannot thus be taken away.

It is not an act to re-invest the Court of Common Pleas of Camden county with its ancient jurisdiction over this subject. It expresses no such purpose either in the title or body of the act. Such a result is merely incidental. It is, therefore, unnecessary to consider how far such an act might be maintained, which incidentally and casually absorbed a portion of a city's powers.

The exclusive authority and control over the licensing of

inns and taverns is not peculiar to this municipality. If it were so, a different question would be presented.

It might not be difficult to support a special law as effectuating the constitutional purpose to secure uniformity in municipal government when it conferred upon a city a power exercised by all others; or lopped off from the powers possessed by it, one peculiar to itself. The court might disregard the mere form of the law; or hold it in such case as necessarily special and local.

Such a rule could not be applied in this case. Camden city stands in this respect with other cities in the state, holding and exercising like powers; and only by a general law bringing them all into uniformity could the legislative purpose have been accomplished.

The repealing act failed to take away from the city council the authority vested in that body by the act of 1871, and consequently its jurisdiction remained exclusive of any right in the Common Pleas.

The license granted by the Pleas is set aside.